UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELECTRONIC PRIVACY INFORMATION CENTER,

  Plaintiff,

  v.

DEPARTMENT OF HOMELAND SECURITY,

  Defendant.

Civil Action No. 04-1625
PLF/DAR

## REPORT AND RECOMMENDATION

Defendant's Motion for Summary Judgment (Docket No. 9) is pending for

consideration by the undersigned United States Magistrate Judge.  Upon consideration of the

motion, the memoranda in support thereof and in opposition thereto and the entire record

herein, the undersigned recommends that Defendant's motion be **GRANTED**.

## I.  BACKGROUND

Plaintiff is a non-profit research center, the activities of which include the  review of

federal data collection and data sharing policies to determine the impact of such policies on

civil liberty and privacy interests.  Complaint (Docket No. 1), ¶ 3.   Plaintiff initially

commenced this Freedom of Information Act action for injunctive and other appropriate relief

for the alleged improper withholding of agency records by the United States Census Bureau

and United States Customs and Border Protection (CBP).  By a stipulation filed on November

8, 2004, Plaintiff voluntarily dismissed its claims against the Department of Commerce.

Stipulation of Dismissal (Docket No. 6) at 1.

Plaintiff requested from the United States Census Bureau ("Census"), by letter dated

May 14, 2004, "copies of 'correspondence or communications between the Census Bureau

and law enforcement or intelligence agencies, concerning access to completed census

questionnaires or census data.'" Complaint, ¶ 8.  In the course of responding to this request,

Census referred five pages of e-mail messages to CBP to review and provide a

recommendation for proper information disclosure.  Id.   Specifically, the e-mail

communications addressed a request from CBP to Census for demographic data for

individuals who had identified themselves as being of Arab ancestry on the 2000 census.  Id.

On July 9, 2004, Joanne Stump ("Stump"), the FOIA Appeals Officer and Chief of the

Disclosure Law Branch of the Office of Regulations & Rulings at CBP, returned to Census

redacted copies of the e-mails for inclusion in Census's FOIA response to EPIC.  See

Defendant's Memorandum of Points and Authorities in Support of its Motion for Summary

Judgment ("Defendant's Memorandum) at 3.  By letter dated July 23, 2004, Census

responded to Plaintiff's request by providing, *inter alia*, copies of the five pages of redacted

e-mail messages.  Complaint, ¶ 9. Census informed Plaintiff that all redactions were made

solely at the request of CBP and as such Plaintiff had a right to appeal the redactions directly

to CBP.  Id., ¶ 9.

Plaintiff appealed the partial withholding on the five pages of e-mail messages by

letter on July 30, 2004.  Complaint, ¶ 10.  CBP did not respond to the appeal letter until

September 22, 2004, on which date Plaintiff filed its complaint.  Defendant's Memorandum at

3.  However, CBP did not substantively respond to Plaintiff's appeal letter until December 17,

2004, in which it affirmed in part the original redactions but released additional information

to Plaintiff.  <u>Id.</u> at 4.  CBP reissued the five e-mail messages with revised redactions and the justifications for the partial withholdings pursuant to 5 U.S.C. § 522(b)(2), (b)(5) and (b)(6). <u>Id.</u>


## II. CONTENTIONS OF THE PARTIES

Defendant moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment, alleging that DHS has released to Plaintiff all responsive, non-exempt documents with the balance of information redacted as exempt from disclosure under FOIA, pursuant to 5.U.S.C. § 552 (B)(2), (5), and (6).  Defendant asserts four grounds in support of its motion: (1)  DHS segregated and released all non-exempt information by performing a line by line review of each e-mail communication to determine suitability of the information for release; (2) DHS properly withheld portions of two e-mail communications predominately because the information contained internal information within the scope of statutory exemption 2; (3) DHS satisfied the requirements of the deliberative privilege process by redacting information defined as both pre-decisional and deliberative as allowed under statutory exemption 5; and (4) Plaintiff did not carry its burden of establishing a public interest in the disclosure of the names of CBP and DHS employees; disclosure of such information did not comport to the core purpose of FOIA.  Defendant's Memorandum at 5-13.

Plaintiff opposes Defendant's motion, and contends that summary judgment is not warranted, for the following reasons: (1) there is public interest in the manner in which the Defendant disseminates information to the public; (2) Defendant failed to meet its burden of demonstrating that information contained in E-mail B is both pre-decisional and deliberative; (3) public interest warrants the release of the names and titles of the agency officials who

sought information regarding individuals of Arab ancestry; (4) Defendant failed to show that

it released all reasonably segregable information; and (5) it is appropriate for this Court to

conduct an *in camera* inspection. Plaintiff's Opposition to Defendant's Motion for Summary

Judgment ("Plaintiff's Opposition") (Docket No. 11) at 6-22.

Defendant, in its reply, maintains that its withholdings were proper under the statute,

and that it segregated and released to the Plaintiff all non-exempt material.  Defendant's

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Defendant's

Reply") (Docket No. 15) at 5-19.  Defendant also asserts that an *in camera* inspection is not

warranted in light of its detailed justifications for its withholdings, and the Plaintiff's inability

to show the Defendant acted in bad faith.  Id. at 19-20.

## III.  APPLICABLE STANDARDS

In accordance with Federal Rule of Civil Procedure 56(c), a court must grant summary

judgment when the evidence in the record demonstrates that there are no disputed issues of

material fact and that the moving party is entitled to judgment on the undisputed facts as a matter

of law. Fed. R. Civ. P. 56©).  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v.

Atwood, 43 F. 3d 1538, 1540 (D.C. Cir. 1995).  The burden is upon the non-moving party to

demonstrate that there are material facts in dispute.  Celotex, 477 U.S. at 324.  A genuine issue of

material fact exists if the evidence, when viewed in light most favorable to the non-moving party,

"is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Material facts are in dispute if they are capable of

affecting the outcome of the suit under governing law.  Id.  In considering a motion for summary

judgment, all evidence and inferences to be drawn from the underlying facts must be viewed in

the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 587 (1986); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn

in [his] favor."  Anderson, 477 U.S. at 248; see also Bayer v. United States Dept. of Treasury,

956 F. 2d 330, 333 (D.C. Cir. 1992).

          Moreover, Rule 56(e) of the Federal Rules of Civil Procedure provides, in

relevant part:

> When a motion for summary judgment is made and supported
> as provided in this rule, an adverse party may not rest upon the
> mere allegations or denials of the adverse party's pleading, but
> the adverse party's response, by affidavits or otherwise
> provided in this rule, must set forth specific facts showing that
> there is a genuine issue for trial.  If the adverse party does not
> so respond, summary judgment, if appropriate, shall be entered
> against the adverse party.

Fed. R. Civ. P. 56(e).  The nonmoving party must therefore:

> go beyond the pleadings and by her own affidavits, or by the
> "depositions, answers to interrogatories, and admissions on
> file," designate "specific facts showing that there is a genuine
> issue for trial" . . . Rule 56(e) permits a proper summary
> judgment motion to be opposed by any of the kinds of
> evidentiary materials listed in Rule 56©), except the mere
> pleadings themselves, and it is from this list that one would
> normally expect the nonmoving party to make the showing[.]

Celotex, 477 U.S. at 324 (emphasis added).  In addition, Local Civil Rule 7(h) provides:

> Each motion for summary judgment shall be accompanied by a
> statement of material facts as to which the moving party
> contends there is no genuine issue, which shall include
> references to the parts of the record relied on to support the
> statement.  An opposition to such a motion shall be
> accompanied by a separate concise statement of genuine issues
> setting forth all material facts as to which it is contended there
> exists a genuine issue necessary to be litigated, which shall
> include references to the parts of the record relied on to support
> the statement . . . In determining a motion for summary
> judgment, the court may assume that facts identified by the
> moving party in its statement of material facts are admitted,

> <u>unless such a fact is controverted in the statement of genuine</u>
> <u>issues filed in opposition to the motion.</u>

LCvR 7(h) (emphasis supplied); <u>see also</u>, LCvR 56.1.  The District of Columbia Circuit has

held that "[i]f the party opposing the motion fails to comply with this local rule, then 'the

district court is under no obligation to sift through the record' and should '[i]nstead . . . deem

as admitted the moving party's facts that are uncontroverted by the nonmoving party's Rule

[LCvR 7(h)] statement.'"  <u>Securities and Exch. Comm'n v. Banner Fund Int'l</u>, 211 F. 3d 602,

616 (D.C. Cir. 2000) (citation omitted).  The District of Columbia Circuit "[has]

explained...that the 'the procedure contemplated by the [local] rule . . . isolates the facts that

the parties assert are material, distinguishes disputed from undisputed facts, and identifies the

pertinent parts of the record."  <u>Burke v. Gould</u>, 286 F. 3d 513, 517 (D.D.C. 2002) (<u>quoting</u>

<u>Gardels v. Cent. Intelligence Agency</u>, 637 F. 2d 770, 773 (D.C. Cir. 1980)).  This circuit has

affirmed the grant of summary judgment where the nonmoving party failed to cite any

evidence in the record, and in the statement of genuine factual issues, "did not set forth

specific, material facts, but simply asserted, without citing evidence in the record, that there

was a disputed issue[.]"  <u>Burke</u>, 286 F. 3d at 518 (<u>quoting</u> <u>Tarpley v. Greene</u>, 684 F. 2d 1, 7

(D.C. Cir. 1982)).

     Finally, Rule 56(f) of the Federal Rules of Civil Procedure provides that

> [s]hould it appear from the affidavits of a party opposing the
> motion that the party cannot for reasons stated present by
> affidavit facts essential to justify the party's opposition, the
> court may refuse the application for judgment or may order a
> continuance to permit affidavits to be obtained or depositions to
> be taken or discovery to be had or may make such other order
> as is just.

Fed. R. Civ. P. 56(f).

In FOIA matters, the District Court reviews *de novo* all agency claims to withhold information pursuant to FOIA.  See 5 U.S.C. § 552(a)(4)(B) (2006).  "[T]he burden is on the agency to show that each disputed withholding or redaction was proper."  5 U.S.C. § 552(a)(4)(B) (2006); Judicial Watch of Florida v. U.S. Dep't of Justice, 102 F. Supp. 2d 6, 10 (D.D.C. 2000) (citing King v. U.S. Dep't. of Justice, 830 F. 2d 210, 217 (D.C. Cir.1987)).  "Once a court determines that the affidavits are sufficient, no further inquiry into their veracity is required." Judicial Watch Inc. v. Export-Import Bank, 108 F. Supp. 2d 19, 25 (D.D.C. 2000).  The court should grant a FOIA requester's motion for summary judgment "[w]hen an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption[.] "  Coldiron v. U.S. Dep't of Justice, 310 F. Supp. 2d 44, 48 (D.D.C. 2004) (citing Petroleum Info. Corp. v. Dep't of Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992).  Conversely, the agency affidavits "cannot support summary judgment if they are conclusory, merely reciting statutory standards, or if they are too vague or sweeping."  King, 930 F.2d at 219 (internal quotation marks omitted).


## IV.  DISCUSSION

The undersigned finds that Defendant's motion, in compliance with Local Rule 7(h), is accompanied by "a statement of material facts as to which the moving party contends there is no genuine issue, which [includes] references to the parts of the record relied on to support the statement."  See Defendant's Statement of Material Facts Not in Dispute.


***Exemption 2***

Exemption 2 of FOIA exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Specifically, it protects agency matters considered "predominately internal," so that it does not embody any 'secret law' of the agency" or "attempt to modify or regulate public behavior." Crooker v. ATF, 670 F. 2d 1051, 1073, 1075 (D.C. Cir. 1981) (*en banc*). Exemption 2 includes two categories. "The first category covers trivial administrative data, 'Low 2 exemptions,' which include file numbers, mail routing stamps, data processing notations and other administrative markings." Judicial Watch, Inc. v. U.S. Dep't of Commerce, 83 F. Supp. 2d 105, 110 (D.C. Cir. 1999) (citing Lesar v. U.S. Dep't of Justice, 636 F. 2d 472, 485 (D.C. Cir. 1980). The second category, "High 2," consists of predominately internal documents the disclosure of which "may risk circumvention of agency regulation." Schiller v. Nat'l Labor Relations Bd., 964 F.2d 1205, 1207 (D.C. Cir. 1992). At issue in this action are two instances in which Exemption 2 was employed to justify non-disclosure. Defendant submits that material in "E-mail A" relates to "trivial administrative matters of no genuine public interest[,]" and that the disclosure of the redacted material in "E-mail B," "may risk circumvention of agency regulation." Defendant's Memorandum at 9.

### E-mail A

Defendant maintains that the challenged withholding in E-mail A concerns five lines discussing "CBP['s] internal review process for authorization to disclose publicly CBP activities." Defendant's Memorandum at 9. Defendant alleges this information appropriately falls within the Low 2 exemption as it "merely concerns the process for internal 'command, control, and review' of a very narrow range of agency decision making." Id. Defendant further contends the material is neither "secret law" nor information meant to "regulate public behavior." Id.

Plaintiff alleges that the information redacted from E-mail A contains information in which the public has an interest. Plaintiff relies on Berg v. Commodity Futures Trading

Commission, 1994 U.S. Dist. LEXIS 8500, at *13-14 (N.D. Ill. June 21, 1994), which held the

internal procedures by which an agency handles public inquiries and complaints are "within

the realm of the public's interest" and "do not fall within Exemption 2."  Plaintiff's

Opposition at 7.  Plaintiff insists the public "unquestionably has a legitimate interest in

knowing how CBP determines what information to release, and is directly affected by the

process the agency uses to make such determinations." Id. at 9.

The undersigned finds that Plaintiff's argument is not persuasive.  As noted in Crooker

v. ATF, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981), "any internal personnel rules and practices

of an agency [have] some effect on the public-at-large."  Crooker, 670 F.2d at 1074.  Plaintiff

can not overcome the proposition that an internal review process which have some ripple

effect on the public does not embody any "secret law" of the agency, nor does it "regulate

public behavior."  Accordingly, the undersigned finds that the redacted materials in Email A

relates to administrative practices developed for agency personnel's internal use.

Plaintiff notes that the same matereial is withheld under a "deliberative process"

rationale pursuant to Exemption 5.  Plaintiff's Opposition at 8.  Plaintiff states that the joint

justifications are incongruent, and suggests that "defendant's justifications for withholding the

material are inadequately detailed." Id. at 8.  However, Plaintiff does not provide any authority

for its contention that Defendant could not use the aforementioned statutory exemptions in

combination or in the alternative to support its basis for non-disclosure.  For these reasons, the

undersigned finds that Plaintiff has not provided a compelling argument for the disclosure of

this "trival administrative matter."


### E-mail B

Defendant contends that the twelve lines of controverted material in "E-mail B"

represent "current and proposed operational practices" which "concern procedures for the

detection by CBP personnel of illegal border crossing activities." Defendant's Memorandum

at 9.  Defendant maintains the materials were properly withheld as disclosure "may risk

circumvention of agency regulation." Id.  Defendant contends that knowledge of the withheld

information "would aid those members of the importing or traveling public who seek to evade

the reporting or detection of their international border crossing activities." Id. at 10.

Defendant argues that even proposed but rejected practices could aid "putative smugglers"

who would benefit from learning about the investigatory practices or the lack thereof by the

CBP.  Id.

　　　　To fall within Exemption 2, the material withheld must be "predominantly internal"

and its disclosure "significantly risks circumvention of agency regulations or statutes."

Crooker, 670 F.2d at 1073-74.  Defendant contends that the "operational practices" at issue

relate to procedures used for the "detection" of illegal activity -- not for *defining* of illegal

activity -- and that the materials are not used as "secret law" or for the "regulation of public

activity."  Defendant appropriately compares the "operational procedures" for the detection of

illegal border activities to that of a manual that establishes "law enforcement investigatory

techniques."  In Crooker, such a manual was found to be exempt when the court "reasoned

that the manual sought not "to modify or regulate public behavior, but rather "only to observe

[the public] for illegal activity."  Id. at 1075.   Thus, the material at issue can be deemed to be

information used in the internal workings of the agency properly satisfying the first prong of

"predominately internal."

　　　　Plaintiff did not challenge Defendant's contention that the detection of illegal border

crossing activies is properly regarded as "predominately internal."  Instead, Plaintiff argues

that Defendant failed to show a "signficant risk" of circumvention of agency law or

regulations. Plaintiff's Opposition at 9. To that extent, Plaintiff argues that Defendant failed to

"identify any agency regulation or statute that could be circumvented as a result of this

information's disclosure."  Plaintiff relies on Nat'l Treasury Employees Union v. Customs

Serv., 802 F.2d 525, 528 (D.C. Cir. 1986), in support of its contention that such a failure

prohibits this Court from determining whether the information is about current and proposed

activity or secret law.  Id.  However, the lack of identification of an agency regulation or

statute is not dispositive of whether a FOIA defendant carried its burden.  The District of

Columbia Circuit has noted that the defendant did not identify a specific statute or regulation,

but nevertheless concluded that a risk of circumvention of law existed.  Nat'l Treasury

Employees Union, 802 F.2d at 530.  Additionally, the undersigned notes Defendant attemptted

to cure its exemption justification by listing several statutes in its Reply to Plaintiff's

Opposition at  6-7.

   Finally, Plaintiff alleges that there are no signficant risks in disclosing procedures

"which the agency does not employ."  Plaintiff's Opposition at 8. Although the e-mail

communication, in this case, is not a policy manual, the content of the communication

contains "current or proposed procedures" used for the "detection of illegal border crossing

activities." As such, disclosure of proposed detection activities, or the lack thereof, could be

used to gain insight into the methods and criteria utilized by CBP to detect border activity,

thereby altering the behavior of those seeking to avoid detection.  Further, granting an

exemption for the information described by Defendant would be in accordance with the intent

underlying Congress' enactment of Exemption 2, which included the desire to prevent the

"release of materials containing law enforcement investigative techniques." Crooker, 670 F.2d

at 1062.  Accordingly, the undersigned finds that the withheld portion of Email-B is protected

by Exemption 2.


### Exemption 5

   Defendant redacted material responsive to Plaintiff's request under FOIA Exemption

5, which permits the withholding of "inter-agency or "intra-agency memorandums or letters

which would not be available by law to a party other than an agency in litigation with the

agency." 5 U.S.C. § 552(b)(5) (2006).[1]  This exemption encompasses documents that would

normally be privileged in the civil discovery context, including documents that would

---

[1]  As a preliminary matter, the undersigned observes that there is no dispute that the documents at issue were
transmitted between two government agencies.

typically be protected by the "deliberative process" privilege <u>Nat'l Labor Relations Bd. v.</u>

<u>Sears, Roebuck & Co.</u>, 421 U.S. 132, 148-149, (1975).  Exemption 5 and the deliberative

process privilege operate to

> protect the decision-making processes of government agencies and
> encourage the frank discussion of legal and policy issues by
> ensuring that agencies are not forced to operate in a fishbowl.
> Nevertheless, this privilege, like all FOIA exemptions, must be
> construed as narrowly as consistent with efficient Government
> operation.

<u>Mapother v. Dep't of Justice</u>, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (internal citations and

quotation marks omitted). Defendant contends that material in E-mails A and B are exempt

from disclosure under the "deliberative process privilege," which does not apply unless the

document is predecisional and deliberative.  <u>Id.</u> at 1537.  A decision will be considered pre-

decisional if "it was generated before the adoption of an agency policy."  <u>Coastal States Gas</u>

<u>Corp. v. Dep't of Energy</u>, 617 F.2d 854, 866 (D.C. Cir. 1980).   A document is "deliberative"

if it "makes recommendations or expresses opinions on legal or policy matters." <u>Vaughn v.</u>

<u>Rosen</u>, 523 F.2d 1136, 1144 (D.C. Cir. 1975).

     Plaintiff concedes that the material withheld from E-mail A pursuant to Exemption 5

is "likely to fall with[in] the deliberative process privilege; therefore the only material at

issue before this Court is the information withheld in E-mail B."  Plaintiff's Opposition at 12.

Thus, this dicusssion is limited to Defendant's proposition that the sixteen lines redacted in

E-mail B, purusant to Exemption 5, are both predecisional and deliberative. Defendant argues

that the redacted material is "pre-decisional" because the e-mail at issue recants the

"ingredients of the decision making process," and is "deliberative" because the e-mail

reflected the opinion of employees regarding a matter which was not the policy of the

agency.

*Predecisional*

Plaintiff challenges whether E-mail B qualifies as pre-decisional. Specifically, Defendant withheld "CBP's analysis and assessment of certain public data provided by Census, as well as how the "analysis and assessment advise[d] a possible application of the data within a proposed CBP operational program." Defendant's Memorandum at 13. Defendant admits that at the time E-mail B was written a "review of the analysis and recommendation had already occurred and had resulted in a decision to cease both further analysis and the proposed operational program."  Id.  E-mail B seemingly reflects a reply to an inquiry regarding the usage of information in the analysis and recommendations for a proposed program.  Defendant maintains that the material is pre-decisional as the e-mail "recounted recommendations and evaluations for the purpose of informing Census."  Id. Defendant supported this proposition with the only case that has encountered such a post-decisional e-mail that recants pre-decisional deliberations.  N. Dartmouth Props. Inc. v. U.S. Dep't of Hous. & Urban Dev., 4 F. Supp. 65 (D. Mass. 1997). In North, an e-mail message from one agency official to another was protected from disclosure even though it was generated after the agency decision was made. While the message reflected the sender's personal views, opinions, and recommendations concerning the matter decided, the message nevertheless reiterated the agency's pre-decisional deliberations and was ultimately declared "deliberative."  The court further concluded that such post-decisional e-mails that repeat pre-decisional accounts "must be protected to avoid revealing the "the ingredients of the decision making process." Id. at 68.

Plaintiff fails at its attempt to distinguish <u>North</u> by suggesting that the holding was based in part on the e-mail writer's knowledge of the agency's decision at the time he prepared his comments.  <u>See</u> Plaintiff's Opposition at 12.  Knowledge, or the lack thereof, of the disposition of the agency's decision was not dispositive of the <u>North</u> court's holding.  The court addressed the effects which disclosure of such information could have on agency communications, and concluded that the "'deliberative process' privilege must apply, so that other agency employees will not be deterred from expressing their own opinions in the future."  <u>Id.</u> at 68.  Thus, the applicable authority supports Defendant's argument that disclosure of this information could deter agency employees from being candid in the future.

*Deliberative*

A pre-decisional document may still not fall within the confines of Exemption 5 if it was not part of the 'deliberative' process.  <u>Formaldehyde Inst. v. Dep't of Health & Human Serv.</u>, 889 F.2d 1118, 1121 (D.C. Cir. 1989).  Thus, the undersigned must also determine whether E-mail B was "deliberative."  A document is "deliberative" if it "makes recommendations or expresses opinions on legal or policy matters."  <u>Vaughn</u>, 523 F.2d at 1144.  Defendant asserts that the e-mail communication at issue purports to be a response to an inquiry from Census regarding how specific data was used by the CBP.  Defendant asserts that the contents of the e-mail reflected the "consultative process" about the proposed operational project for which the data was requested.  Plaintiff objects to this proposition, insisting that the content of the e-mail seemed to reflect the reason the data was sought rather than deliberations over using the data.  Defendant contends that the authors of the e-mails, former employees of CBP (or individuals no longer involved in CBP projects), offered their personal opinions about how the requested census data was considered for a proposed

operational project.  Defendant argues that disclosure of "personal opinions" would confuse the public regarding a position of the agency that was ultimately rejected.

Plaintiff asks the court to consider CBP's public statement regarding how the data was ultimately used. Plaintiff's Opposition at 13.  However, does not offer any authority to support its suggestion that information describing an agency proposal loses its deliberative process protection if an agency decides to use the subject matter of the initial proposal for another purpose.  Moreover, courts have routinely held that Exemption 5 covers "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Coastal States 617 F.2d at 866.  Accordingly, the undersigned finds that DHS's invocation of Exemption 5 is well founded.


### Exemption 6

The final exemption invoked by Defendant is FOIA Exemption 6.  This exemption permits governmental agencies to withhold disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6) (2006).  Defendant DHS withheld the names of CBP and DHS employees which appeared in all five e-mails, and the direct dial telephone numbers of CBP employees which appear in four e-mails (excluding E-mail A).  Plaintiff concedes that Defendant properly withheld the telephone numbers of agency employees, but opposes the redaction of the names of the individuals who wrote, or to whom reference is made, within the e-mail passages. [2]

---

[2]  "What remains at issue is defendant's withholding of certain government employees' names in all e-mails." Plaintiff's Opposition at 15.

In 1982, the Supreme Court adopted a broad construction of "similar files," holding

that the term applies to any detailed information in government files about a particular

individual from which the identity of the individual can be discerned.  U.S. Dep't of State v.

Washington Post Co., 456 U.S. 595, 602 (1982).[3]  The determination of whether disclosure of

such files would serve as a clearly unwarranted invasion of personal privacy requires the court

to "balance the private interest involved (namely, "the individual's right of privacy") against

the public interest" that would be advanced by disclosing it. Horowitz v. Peace Corps, 428

F.3d 271, 278 (D.C. Cir. 2005) (quoting Dep't of the Air Force v. Rose, 425 U.S. 352, 372-73

(1976) (internal quotation marks omitted)).  The public interest under FOIA is limited to that

which "'sheds light on an agency's performance of its statutory duty' in order to inform the

citizens 'about what their government is up to.'"  S.D. Edmonds v. FBI, 272 F. Supp. 2d 35,52

(D.D.C. 2003) (quoting U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press,

489 U.S. 749, 773 (1989)).

Defendant contends that it indeed satisfies the requisite balancing test to uphold its

decision of redacting exempted information as the privacy interest of CBP and DHS

employees is not outweighed by any public interest in the release of employees' names.

Defendant maintains that the disclosure of the information at issue would subject the

employees to harrasment and unwarranted attention due to their job involvment in engaging in

anti-terrorism efforts which are frequently unpopular. Defendant's Memorandum at 18.

Plaintiff contends that the remote potential for "harassment and unwanted attention" is an

exceedingly weak privacy interest to permit the use of  Exemption 6.  Plaintiff's Opposition at

18.  However, Defendant finds support for its assertion  in Lesar v. U.S. Dep't of Justice, 636

F.2d 472, 487 (D.C. Cir. 1980).  In Lesar, the court recognized that FBI agents, as law

_____
[3]  The parties do not dispute whether the e-mail addresses at issue fall within the parameters of the statutory term
of "similar files."

enforcement officers, "have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harrassment in either their official or private lives." <u>Lesar</u>, 636 F. 2d at 487.

Plaintiff argues that federal employees have an exetremly minimal privacy interest in the mere fact that they work for the government.  Plaintiff relies on the fact that the governement discloses the names, occupation and salaries of its employees through the Office of Personnel Management. Plaintiff's Opposition at 18. It is Plaintiff's position that the availability of this public information makes the redaction of names within the controverted e-mail communications is *"de minimis"* in nature.  Defendant contends that the release of the individual employee's names would not "contribut[e] signficiantly to public understanding of the operations or activities of the government." <u>U.S. Dep't of Defense v. Fed. Labor Relations Auth.</u>, 510 U.S. 487, 495 (1994) (internal quotations marks omitted).

Defendant submits that just as this Court held in <u>Voinche v. FBI</u> "there is no reason to believe that the public [would] obtain a better understanding of the workings of various agencies by learning the identities of" the individuals associated with the documents. <u>Voinche v. FBI</u>, 940 F. Supp. at 330.  Plaintiff insists that, "the public undeniably has an interest in knowing which agency officials sought information about where individuals of Arab ancestry live, which position these individuals hold and the true purpose of the request." Plaintiff's Opposition at 19.  However, the information withheld is comparable to that withheld in <u>Vionche.</u>  Accordingly, the undersigned finds that Defendant has properely redacted the names of CBP and DHS employees pursuant to Exemption 6.

### *Segregability*

In 1974, Congress incorporated in FOIA a requirement in that "[a]ny reasonable

segregable portion of a record shall be provided to any person requesting such a record after

deletion of the portions which are exempt."  5 U.S.C. §552(b); <u>Voinche</u>, 412 F. Supp. 2d at 70.

"The question of segregability is subjective based on the nature of the document in question

and an agency must provide a reasonably detailed justification rather than conclusory

statements to support its claim that the non-exempt material in a document is not reasonably

segregable."  <u>Id.</u>; <u>see also</u> <u>Mead Data Cent.v. Dep't of the Air Force</u>, 566 F.2d 242, 261 (D.C.

Cir. 1977).

At issue in this case is whether Defendant provided conclusory statements to support

its segregablity of agency records. Defendant contends that it peformed a line-by-line analysis

of each e-mail communication to determine disclosure suitability.  Defendant's Memorandum

at 20.  By its own admission, in reference to the sixteen lines redacted in E-mail B, Defendant

indicates that "[a] very small percentage of the redacted material could, on its face, be

described as factual."  Defendant's Memorandum, Ex.. 1, Declaration of Joanne Roman

Stump ("Stump Declaration"), ¶ 16.  However, Defendant maintains that material withheld in

E-mail B is "inextricably intertwined with analysis and recommendations" and discloure

"would deter future frank and open discussions."  <u>Id.</u>

Plaintiff challenges the Defendant's aforementioned explanation as conclusory, and

alleges that Defendant failed to sufficiently explain the nature of the "factual material"

withheld in E-mail B. Plaintiff's Opposition at 21.  Defendant, in its reply, asserts that it is

"impossible" to disclose the small segment of material as "it is dispersed throughout the

recommendations and analysis."  Defendant's Reply at 18. Defendant further contends that

disclosure would reveal the material it deems properly exempted.  <u>Id.</u> at 18.

The undersigned finds, for the reasons offered by Defendant, that Defendant provided

sufficient detail to support its justification that it released all non-exempt material in Email B.

Accordingly, Plaintiff is not entitled to relief with respect to this claim.

Finally, Plaintiff argues that there is "no indication that CBP attempted to segregate

releaseable material withheld under any other exemption[.]"  Plaintiff's Opposition at 21.  To

be sure, it is the agency which must provide a "detailed justification" for its non-segregability

in order to evidence that all reasonably segregable material has indeed been released.  Mead

Data, 566 F.2d at 261. To that end, Defendant appropriately carried its burden by providing a

supplemental declaration discussing the segregability of the withholdings under each

exemption. Defendant contends that the segments redacted pursuant to Exemption 6 and

Exemption 5 (as to E-mail A) could not be segregated further, as the withholdings regarded

"only names (or similarly identifying pronouns) and telephone numbers." Defendant's Reply

at 18. The balance of the redactions, sixteen lines of E-mail B, exempted pursuant to

Exemption 2 and 5 contains the small portion of factual material previously discussed.


***In camera Inspections***

FOIA provides district courts with the discretion to examine the contents of agency

records *in camera* to determine whether such records or any part thereof shall be withheld

under the exemptions. See 5 U.S.C. 552(a)(4)(B) (2006).  The discretionary *in camera* review

is designed to be invoked when the issue before the court cannot be otherwise resolved; no

provision of mandates that the documents at issue be individually examined in every case.

Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co., 437 U.S. 214. (U.S. 1978).  It is

important to note that *in camera* review is "essentially *ex parte* and unaided by the benefits of

adversarial proceedings which buttress the validity of judicial decisions." Mead Data Cent.v.

Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  Thus, *in camera* reviews should be used sparingly.

Plaintiff urges the court to review the agency records *in camera*.  Plaintiff contends this judicial review is appropriate according to the factors articulated in Spirko v. Postal Serv., 147 F.3d 992, 996 (D.C. Cir. 1998) (quoting Quinon v. FBI, 86 F.3d 1222, 1228 (D.C. Cir. 1996)).  The court in Quinon suggested that *in camera* inspection is appropriate when "the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims . . . when the number of withheld documents is relatively small, and when the dispute turns on the contents of the documents, and not the parties' interpretations of those documents." Quinon, 86 F.3d at 1228. In support of its request, Plaintiff asserts: (1) Defendant failed to provide sufficient detailed explanations; (2) the court will not be burdened by the review of the five records; and (3) the character of the redacted material is at issue not the parties' interpretation of the material. Defendant declares that *in camera* review is unnecessary, and that contending that sufficient details were provided in its declarations by Joanne Stump to justify the redactions.  Defendant maintains that Plaintiff failed to offer proof to the contrary.

The applicable standard is  "whether the district judge believes that *in camera* inspection is needed in order to make a reasonable *de novo* determination." Ray v. Turner, 587 F.2d 1187, 1195 (D.C. Cir. 1978). If an agency fails to provide detailed explanations to justify its redactions, "the district court has several options, including in camera inspection, requesting further affidavits or allowing the plaintiff discovery." Allen v. CIA, 636 F.2d 1287, 1298 (D.C. Cir. 1980).

The undersigned finds that Plaintiff has failed to demonstrate that *in camera* review is an appropriate exercise of the court's discretion.  The undersigned therefore will recommend that said request be denied.

## VI.  CONCLUSION

Upon consideration of the Dfendant's motion, the memoranda in support thereof and in opposition thereto and the entire record herein, it is, this 22nd day of December, 2006,

**RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED**.

December 22, 2006                                    /s/ _____
                                                    DEBORAH A. ROBINSON
                                                    United States Magistrate Judge

**Within ten days after being served with a copy, any party may file written objections to this report and recommendation.  The objections shall specifically identify the portions of the findings and recommendeations to which objection is made, as well as and the basis of the objection.  In the absence of timely objections, further review of issues addressed in this report and recommendation may be deemed waived.**